# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

KRISANNE HALL,

                         **Plaintiff,**


-vs-                                          **Case No.   3:10-cv-442-J-99MMH-TEM**


ROBERT L. "SKIP" JARVIS, JR.,
**individually and in his official capacity**
**as State Attorney for the Third Judicial**
**Circuit of Florida,**

                         **Defendant.**
_____

# ORDER

        This cause comes before the Court on consideration of Defendant's Motion to Dismiss

the Amended Complaint (Doc. No. 15) in its entirety, filed on July 16, 2010, to which Plaintiff

filed a Response (Doc. No. 18), on August 9, 2010.   In the Amended Complaint, Plaintiff

states the following federal claims pursuant to Title 42, United States Code, Section 1983:

Count I – declaratory relief and damages for a violation of the First Amendment to the United

States Constitution; Count II – injunctive relief for a violation of the First Amendment to the

U.S. Constitution; Count III – declaratory relief and damages for a violation of the Equal

Protection Clause of the Fourteenth Amendment to the U.S. Constitution based on disparate

treatment; Count IV – declaratory relief and damages for a violation of the Equal Protection

Clause of the Fourteenth Amendment to the U.S. Constitution based on a "class-of-one"; and

Count V – injunctive relief for a violation of the Equal Protection Clause of the Fourteenth

1

Amendment to the U.S. Constitution. In addition to the federal claims, Plaintiff also alleges the following state law claims pursuant to the Florida Constitution: Count VI – declaratory relief for a violation of Article I, §§ 2, 4, and 5, and Count VII – injunctive relief for a violation of Article I, §§ 2, 4, and 5.   After a careful consideration of the parties' submissions and the applicable law, Defendant's Motion will be denied in part and granted in part as explained below.

## I.   INTRODUCTION

Plaintiff's Amended Complaint makes the following factual allegations:

> KRISANNE HALL, [Plaintiff], is an attorney licensed to practice in the State of Florida . . . [with] significant experience and academic insight into a variety of constitutional issues and the development of constitutional law in the United States.   At the commencement of this litigation Plaintiff was employed by Defendant, [ROBERT L. "SKIP" JARVIS, JR., State Attorney for the Third Judicial Circuit of Florida]. . . . Plaintiff served as an Assistant State Attorney leading the felony division of the State Attorney's Office in the Live Oak (Suwannee County) office.   Plaintiff's work as an Assistant State Attorney was exemplary and she consistently drew praise and positive employee evaluations from her supervisor and from [] Defendant.

> . . . .

> Plaintiff has been asked to speak to a variety of public groups concerning matters of constitutional law, including originalism as a preferred theory for analyzing constitutional cases and the role of our Founding Fathers in establishing our constitutional Republic.   Plaintiff gave speeches to the Suwannee Republican Executive Committee on February 7, 2010; to area Tea Party meetings on April 4, 2010, April 15, 2010 and April 17, 2010; and to a meeting of the "9/12 organization" on February 27, 2010.   In addition, Plaintiff appeared on a local radio program (96.5 WJTK), on April 21, 2010, which addressed a variety of issues . . . including constitutional originalism, the legal dispute between the State of Florida and the Federal government over the recent health care bill, and the

threat posed by large Federal budget deficits.  Plaintiff spoke at all of those engagements as a private citizen and not as an employee of the State Attorney's Office.  Plaintiff utilized her own resources and funds to prepare for and attend all of the subject speaking engagements.

. . . .

Plaintiff did not address any cases handled by Defendant or the State Attorney's Office during any of her speaking engagements.  Neither did she address any issues pertaining to the administration of that office, to any personnel of that office, or to any other matter concerning [] Defendant, her employment, or the State Attorney's Office in general. Plaintiff did not hold herself out as a representative of the State Attorney's Office at any of her speaking engagements. Plaintiff was simply introduced as an attorney with expertise in constitutional matters of public concern.  Plaintiff did not claim at any speaking engagement that her political and legal views were shared by [] Defendant, by any of [] Defendant's employees, or by the State Attorney's Office in general. Plaintiff's speaking engagements have not interfered in any respect with the effective administration of the State Attorney's Office.  To Plaintiff's knowledge, no one other than her immediate supervisor, a co-worker who had attended one of the speaking engagements, and the Defendant were aware that Plaintiff had engaged in any speaking engagements.

The State Attorney's Office has no written policies governing outside speaking engagements of assistant state attorneys or staff.  However, the long-standing policy at the State Attorney's Office was to allow political speeches and political activity of attorneys and staff.  In particular, [] Defendant, who was previously employed by the State Attorney's Office as an Assistant State Attorney, was active in local politics for the Democratic Party and gave one or more speeches to leaders to the local Democratic Party while serving as an Assistant State Attorney.  Defendant was obviously aware of the liberal policy at the State Attorney's Office regarding outside speaking engagements as he himself had taken advantage of that policy to deliver political speeches under circumstances not unlike those of [] Plaintiff.

On April 22 and April 23, 2010, Defendant wrote a series of e-mails to Plaintiff directing her to cease speaking before any

3

"fringe right wing group" and requiring that she "disassociate [her]self from these folks[.]" . . . Plaintiff through counsel . . . demanded that [Defendant] . . . repeal his ban against Plaintiff's speech. . . . Defendant responded to Plaintiff's letter reaffirming his directive that Plaintiff not engage in speech on political matters and threatening to fire her if she refused to comply with that directive[.]

. . . .

Defendant has not issued such a directive to any other attorney or member of his staff, nor has he barred Plaintiff from speaking to groups with more liberal or progressive political beliefs such as the Democratic Party. Defendant's directive was issued only to Plaintiff and addressed only those organizations which Defendant characterized as "fringe right wing group[s.]" Defendant's directive is based on the content of Plaintiff's speech. On May 21, 2010, Plaintiff filed the instant lawsuit against [] Defendant.

. . . .

On information and belief, Defendant learned about the instant litigation over the weekend, between May 21 and May 24, 2010. On the afternoon of May 24, 2010, [] Defendant called Plaintiff into his office. At that time, Defendant advised Plaintiff that she would be fired if she did not immediately refrain from speaking to groups such as the Republican Party and the Tea Party organization. . . . Defendant did not suggest that any other aspect of Plaintiff's job performance was wanting; the concern was focused only on her speaking engagements.

. . . .

[When Plaintiff refused to agree], . . . Defendant . . . fired Plaintiff and issued to her a written discharge from her employment.

. . . .

Defendant's directive does not ban all speech concerning the Constitution or other political issues of public interest, but only those viewpoints which favor constitutional originalism and limited government. Defendant's directive does not ban

4

> speech to all political groups, but only those "fringe right wing group[s]" which favor construction of the Constitution and limited government, apparently including the Republican Party and the Tea Party organization.
>
> . . . .
>
> Defendant's directive is not based on the potential for disruption of the State Attorney's Office . . . .
>
> . . . .
>
> The directive from [] Defendant that Plaintiff cease her speaking engagements and her association with certain political groups was issued in his official capacity as State Attorney for the Third Judicial Circuit of Florida.

(Doc. No. 13 ¶¶ 12-52) (paragraph numbers omitted).[1]

## II.   STANDARD OF REVIEW ON A MOTION TO DISMISS

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   The federal rule does not require "detailed factual allegations," but "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)) (internal quotations omitted).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents

---

[1] The Court also omitted paragraphs alleging legal conclusions.

central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations omitted). The alleged facts in the complaint must be accepted as true and be construed in the light most favorable to the plaintiffs. *Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir. 2006) (quoting *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)). Recently, in *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010), the Eleventh Circuit recognized that "[a]fter *Iqbal* it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints."

## III.   ANALYSIS

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 is merely a vehicle by which to bring these suits; it does not create any substantive federal rights," and "[t]herefore, the plaintiff must point to a specific federal right that the defendant violated." *Williams v. Bd. of Regents of Univ. Sys.of Georgia*, 477 F.3d 1282, 1299 (11th Cir. 2007) (internal citation omitted).

"To state a claim under . . . [§] 1983, a plaintiff must allege that (1) the defendant deprived him [or her] of a right secured under the United States Constitution or federal law and (2) such deprivation occurred under color of state law." *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010) (citing *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1288

(11th Cir. 2001) and *Arrington v. CobbCnty.*, 139 F.3d 865, 872 (11th Cir. 1998)).   In employment retaliation claims, specifically, "[f]or a public employee to establish that an employer conditioned [his or] her job in a way that burdened a constitutional right impermissibly, the employee must first demonstrate that the asserted right is protected by the Constitution and that he or she suffered an adverse employment action for exercising the right."   *Akins v. Fulton Cnty., Ga.*, 420 F.3d 1293, 1300 (11th Cir. 2005) (internal citation and quotation marks omitted) ("To be considered an adverse employment action in a First Amendment retaliation case, the complained-of action must involve an important condition of employment" . . .; "as a matter of law, important conditions of employment include discharges . . . .").   In *Akins*, the Eleventh Circuit further held:

> [F]or a public employee to establish a prima facie case of First Amendment retaliation, [he or] she must show: 1) that the speech can be fairly characterized as relating to a matter of public concern, 2) that her interests as a citizen outweigh the interests of the State as an employer, and 3) that the speech played a substantial or motivating role in the government's decision to take an adverse employment action.

420 F.3d at 1303.

### a. Plaintiff's Federal Claims for Damages Against Defendant in his Official Capacity are Improper Under § 1983 and are Barred by the Eleventh Amendment to the United States Constitution

In his Motion, Defendant argues that Plaintiff failed to state a cause of action as toher claims for money damages against Defendant in his official capacity because such claims are prohibited by the Eleventh Amendment to the U.S. Constitution and are improper under § 1983.   (Doc. No. 15 at 11-12.)   The Eleventh Amendment bars suits seeking damages

against a state entity, and official-capacity suits filed against state officials are merely an alternative way of pleading an action against the entity of which Defendant is an officer. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985).Moreover, § 1983 does not provide a claim for damages against the state, or its officials in their official capacities, because state governments are not "persons" that can be sued under this section. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the [s]tate.'" *Id.* at 71 (quoting *Kentucky*, 473 U.S. at 167 n.14, and *Ex Parte Young*, 209 U.S. 123, 159-60, 28 S. Ct. 441, 453-54, 52 L. Ed. 714 (1908)).

In her Response to Defendant's Motion, Plaintiff concedes that claims for damages against Defendant in his official capacity are barred, and stipulates that any claims for damages alleged in the Amended Complaint are limited to Defendant in his individual capacity. (Doc. No. 18 at 13-14.) In light of this stipulation, the Court denies Defendant's Motion to Dismiss Plaintiff's claims for damages against Defendant in his official capacity as moot.

### b. *Plaintiff has Sufficiently Alleged That Defendant's Directive is the Policy Behind his Actions*

In an official-capacity suit, the plaintiff must demonstrate that a policy or custom of the governmental entity of which the official is an agent was the moving force behind the violation. *See Hafer v.* Melo, 502 U.S. 21, 27 (1991); *Kentucky*, 473 U.S. at 166. "A policy is a decision that is officially adopted by the [state entity], or created by an official of such

rank that he or she could be said to be acting on behalf of the [same]."  *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) (internal citation and quotation omitted).

Defendant argues that Plaintiff's Amended Complaint against Defendant in his official capacity must be dismissed, because Plaintiff failed to identify a policy or custom of the *State of Florida* that played a part as a "moving force" in Defendant's alleged conduct. (Doc. No. 15 at 11) (emphasis added). Seeking a ruling in his favor, Defendant apparently ignores his own recognition that Plaintiff must allege that the *entity* that Defendant represents was the "moving force" behind the alleged constitutional deprivation, not the *State of Florida*. (*See* Doc. No. 15 at 10) (emphasis added) (quoting*Robinson v. Sec'y*, 2010 WL 2431843, at *2 (M.D. Fla. June 15, 2010)).

"Only those officials who have final policymaking authority may render the [state entity] liable under § 1983."  *Id.* (internal citation and quotation omitted); *see also**Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1325 (11th Cir. 2003) (stating a final policymaker is the decisionmaker who "possesses final authority to establish [state entity] policy with respect to the action ordered") (internal citation and quotation omitted).   "[State entity] liability may be imposed for a single decision by [state entity] policymakers under appropriate circumstances."  *Id.* (internal citation and quotation omitted); *see also**Martinez v. City of Opa-Locka, Fla.*, 971 F.2d 708, 713 (11th Cir. 1992) (same); *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 637 (11th Cir. 1991) (same).

It stands undisputed that Defendant is a policymaker regarding whom to hire or fire in his office; this is reinforced by his citation of such authority to Plaintiff's attorney in the letter dated May 10, 2010.   (*See* Exhibit C to Doc. No. 13) (citing § 27.181, Florida Statutes, for the proposition that "each assistant attorney appointed by the state attorney shall serve at the

pleasure of the state attorney appointing him or her").   Accepting the facts in the Amended Complaint as true, Defendant's issuance of the directive restricting Plaintiff's political speech as a condition of her employment constitutes a policy, a "moving force," behind the allegedly unlawful discharge of Plaintiff.   The Court is satisfied that Plaintiff's identification of Defendant's directive as the policy standing behind the alleged constitutional violation is plausible on its face, and therefore denies Defendant's Motion on this basis.

### c.   *Plaintiff's Claims Seeking Declaratory or Injunctive Relief against Defendant in his Individual Capacity in Counts I, II, VI, and VII are Dismissed*

Seeking dismissal of Plaintiff's prospective relief claims against Defendant in his individual capacity, Defendant asserts that declaratory and injunctive relief do not lie against Defendant in that capacity.   (Doc. No. 15 at 9.)   For support, Defendant relies on the Eleventh Circuit opinion in *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 n.9 (11th Cir. 1995), where the court said, "qualified immunity does not pertain to claims for injunctive or declaratory relief, because these claims are considered to be official capacity claims against the relevant governmental entity."   Seeking a contrary interpretation, Plaintiff cites to *Friends of Everglades v. South Florida Water Management District*, 570 F.3d 1210, 1215 (11th Cir. 2009), where the court noted that injunctive and declaratory relief against individual officers in their official capacity, as opposed to against the government entities, may be readily obtained and easily enforced; thus, Plaintiff argues injunctive and declaratory relief is appropriate against Defendant as an individual.   (Doc. No. 18 at 9-10.).

The Court disagrees with Plaintiff's interpretation of *Friends of Everglades*.   In that case, the Eleventh Circuit dealt with the issue of whether there was a difference between

obtaining prospective relief against state officials in their official capacity and against the state entity itself, and concluded that there was none.  *Friends of Everglades*, 570 F.3d at 1215 ("If anything, injunctions against real people are more easily enforced than those against corporate or government entities because real people can be put in jail.").   The court there did not have to decide the issue of whether it was proper to seek such relief against an officer in his individual capacity.

Nevertheless, the Court finds *Friends of Everglades* opinion particularly instructive on at least one issue: practicality.   As the Eleventh Circuit stated, "[t]o enjoin the [state official in his official capacity] is for all practical purposes to enjoin the [government entity]," "[a]nd equity is practical."  *Id.* at 1216.   Under the circumstances in the instant case, whether Plaintiff is seeking injunctive and declaratory relief against Defendant in his official or individual capacity seems practically inconsequential, even though the parties strongly disagree about this issue.   In either capacity, Defendant is the person to be enjoined – and no one else.

Still, considering the Eleventh Circuit's recognition in *Edwards* that claims for injunctive and declaratory relief are considered to be official capacity claims against the relevant state entity – and implicitly not individual capacity claims – the Court grants Defendant's Motion insofar as it seeks dismissal of Plaintiff's claims for injunctive and declaratory relief against Defendant in his individual capacity.   The foregoing case-law, however, involved federal claims only, and the parties do not present any additional legal authority differentiating those claims from claims brought pursuant to the Florida Declaratory Judgment Act, Chapter 86, Florida Statutes.   However, as it appears that the above reasoning would apply to state law claims as well, the Court will apply the same rationale it applied to

11

the federal claims in Counts I and II, to the state law claims in Counts VI and VII.This does not, in any way, impede Plaintiff in seeking prospective relief in this action, as her claims against Defendant in his official capacity remain.

> ### d.   Plaintiff's Claims for Damages Against Defendant in his Individual Capacity Survive Defendant's Qualified Immunity Defense at This Stage of the Litigation

As to Plaintiff's claims for damages brought against Defendant in his individual capacity, Defendant argues that the Amended Complaint should be dismissedbecause Defendant has qualified immunity.  (Doc. No. 15 at 3.)Plaintiff argues that she met her burden to overcome the qualified immunity defense at this stage of litigation.  (*See* Doc. No. 18 at 3.)

"Personal capacity suits seek to impose personal liability upon a governmental official for actions [the official] takes under color of state law."  *Kentucky*, 473 U.S. at 165.  The official in an individual-capacity suit may, depending on the facts, be able to establish immunity from claims for damages.  *See id.*at 166-67."Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Randall*, 610 F.3d at 714-15 (internal citation and quotation omitted).

When sued individually, "[a] government official acting within this discretionary authority is eligible for qualified immunity when the facts 'taken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional right' and when 'the right was clearly established.'"  *Akins*, 420 F.3d at 1299 (quoting *Saucier v.*

*Katz,* 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001)).   "To overcome a [Fed. R. Civ. P.] 12(b)(6) motion based on the defense of qualified immunity, Plaintiff[] must allege conditions that, in the light of the already clearly established law at the time of the incident, obviously amounted to" a Constitutional violation.[2]*Marsh v. Butler County,* 268 F.3d 1014, 1028 (11th Cir.2003) (en banc); *see also, Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) ("It is . . . appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint 'fails to allege the violation of a clearly established constitutional right.'")

For a public employee to establish that an employer violated his or her constitutional right – i.e., that "an employer conditioned [his or] her job in a way that burdened a constitutional right impermissibly" – "the employee must first demonstrate that the asserted right is protected by the Constitution and that he or she suffered an adverse employment action for exercising that right."*Akins*, 420 F.3d at 1300 (internal citation and quotation omitted).   To establish a prima facie case of First Amendment retaliation in particular, Plaintiff must show that: (1) "the speech can be fairly characterized as relating to a matter of public concern," (2) "her interests as a citizen outweigh the interests of the [s]tate as an employer," and (3) "the speech played a substantial or motivating role in the government's decision to take an adverse employment action." *Id.* at 1303.   For present purposes, the Court will simply determine whether Plaintiff enjoys enough First Amendment protection to overcome Defendant's Motion to Dismiss.

---

[2]Prior to this burden being placed on Plaintiff, however, Defendant needs to show that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts occurred.   *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1254 n.19 (11th Cir. 2010).   In the instant case, the parties do not contest that Defendant was acting within the scope of his discretionary authority.

Under the facts alleged in Plaintiff's Amended Complaint, Plaintiff's speeches at issue in this litigation concerned "matters of constitutional law, including originalism as a preferred theory for analyzing constitutional cases and the role of our Founding fathers in establishing our constitutional Republic," as well as "the legal dispute between the State of Florida and the Federal Government over the recent national health care bill, and the threat posed by large Federal budget deficits." (Doc. No. 13 at 4-5.) According to the Amended Complaint, "Plaintiff did not address any cases handled by Defendant or the State Attorney's Office during any of her speaking engagements," nor "did she address any issues pertaining to the administration of that office, to any personnel of that office, or to any other matter concerning . . . Defendant, her employment, or the State Attorney's Office in general." (*Id*. at 5-6.)

"The [U.S. Supreme] Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."[3]*Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006). Moreover, "the [Supreme] Court has acknowledged the importance of promoting the public's interest in receiving the well-informed views of government employees engaging in civil discussion." *Id*. at 419. Thus, in order to determine whether

---

[3]In *Connick v. Myers*, 461 U.S. 138, 145, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983), the Supreme Court emphasized the significance of citizens' right to speak on matters of public concern:

> The explanation for the Constitution's special concern with threats to the right of citizens to participate in political affairs is no mystery. The First Amendment was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people. Speech concerning public affairs is more than self-expression; it is the essence of self-government. Accordingly, the Court has frequently reaffirmed that speech on public issues occupies the highest rung of the heirarchy [sic] of First Amendment values, and is entitled to special protection.

*Id.*

Plaintiff's speech as alleged is constitutionally protected, the Court must decide whether Plaintiff spoke as a citizen on matters of public interest.  To do so, the Court looks to "the content, form, and context of a given statement, as revealed by the whole record." *Abdul-Rahmanv. Walker*, 567 F.3d 1278, 1283 (11th Cir. 2009) (internal citations and quotations omitted).

 "For speech to be protected as speech on a matter of public concern, it must relate to a matter of political, social, or other concern to the community." *Akins*, 420 F.3d at 1303 (internal citation and quotation omitted).   Additionally, the Supreme Court in *Garcetti*identified two relevant factors for a district court to consider in determining whether the employee spoke as a citizen: (1) "whether the speech occurs in the workplace;" and (2) "whether the speech concerns the subject matter of the employee's job."  547 U.S. at 419, 420-21 ("So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively.")  Neither of the two factors considered in isolation, however, is dispositive.  *Id.*  There, the Supreme Court found that the plaintiff's statements, as recorded in a written memorandum pursuant to his job duties, "owe[] its existence to [his] professional responsibilities," and "the Constitution does not insulate [these] communications from employer discipline."  *Id.* at 421.  Concluding, the Supreme Court stated, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes . . . ."  *Id.*

 Applying the binding legal precedents presented, this Court concludes that according to the facts as alleged in the Amended Complaint, which must be accepted as true for present analytical purposes, Plaintiff spoke as a private citizen on matters of public concern.  In its

determination, the Court looked to the context and the subject matter of the alleged speeches, as well as whether Plaintiff spoke on such issues pursuant to her official duties as the Assistant State Attorney or during the hours of employment with the State Attorney's Office.   On its face, the Amended Complaint alleges facts that, if true,sufficiently show that Plaintiff spoke as a private citizen on matters of public concern.

Next, the Court considers whether Plaintiff has shown that (1) her interests as a private citizen outweigh the interests of Defendant to determine whether the speech merits protection, and (2) whether the speech played a "substantial part" in Defendant's decision.*See Akins*, 420 F.3d at 1304-05.   "Because Plaintiff[] [was a] public employee, and [Defendant] has an interest in preventing speech that is disruptive to the efficient rendering of public services, [the Court must] balance Plaintiff's and Defendant's interests . . . to determine whether the speech merits protection."   *Id.* at 1304.   Since Defendant's interest in discharging Plaintiff was, as alleged in the Amended Complaint, for purely personal reasons, Plaintiff's interest in the exercise of her First Amendmentrightsoutweighs Defendant's interest.   (*See generally* Doc. No. 13.)

Disputing Plaintiff's allegations, Defendant notes that Plaintiff attached to her Amended Complaint a copy of an e-mail written by Defendantwherein he expressed his concerns that the subject matter of Plaintiff's speeches would interfere with Defendant's reputable running of the office; accordingly, his interests outweigh Plaintiff's interests. (Doc. No. 15 at 8.)   Nevertheless, because the Court must accept all of Plaintiff's well-pleaded allegations in the Amended Complaint as true, at this juncture the Court cannot

engage in any premature fact-finding.[4]   For the purposes of Defendant's Motion to Dismiss, the Court finds that Plaintiff sufficiently alleged that her interests outweigh those of Defendant and that as a result of the alleged speaking engagements, she was discharged. Thus, the facts as alleged in Plaintiff's Amended Complaint plausibly state a violation of Plaintiff's constitutionally protected right.

Having determined the first part of the qualified immunity analysis, the Court next considers whether at the time of the alleged incident it was clearly established that it is unlawful to discharge a public employee for refusing to ceaseengaging in speeches regarding matters of public concern as a private citizen, absent any disruption to the efficient operation of the State Attorney's Office."'Clearly established law' is law that is sufficiently established so as to provide public officials with 'fair notice' that the conduct alleged is prohibited." *Randall*, 610 F.3d at 715 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515, 153 L. Ed. 2d 666 (2002) ("For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.   This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be apparent.")).

To determine whether Defendant had fair notice of the illegality of the alleged conduct, the Court may consider: (1) broad case law incorporating statements of principle that "clearly establish law applicable in the future to different set of facts," *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002); (2) cases based on materially similar facts; and (3) whether

---

[4]At a later stage of the proceedings, perhaps, Defendant may present facts regarding the circumstances of Defendant's decision to discharge Plaintiff, the nature of Plaintiff's speech, or some other information that would show the weight of Defendant's interests compared to those of Plaintiff.   At this 12(b)(6) stage, however, the Court must accept the allegations in the Complaint.

"this case fits within the exception of conduct which so obviously violates the Constitution that prior case law is unnecessary," *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). To show that the alleged constitutional violation was clearly established, Plaintiff must "point to law as interpreted by the Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida . . . ." *Keating*, 598 F.3d at 766 (internal quotation omitted) (quoting *Mercado*, 407 F.3d at 1159).

Pointing to such law, Plaintiff maintains that the Supreme Court decision in *Garcetti* "specifically outlined the contours of Plaintiff's First Amendment rights and have particularized notice to Defendant that his action in discharging Plaintiff for her political speech was unconstitutional." (Doc. No. 18 at 7.) Based on the allegations of Plaintiff's Amended Complaint, the Court agrees. In *Garcetti*, the Supreme Court addressed the First Amendment rights of public employees, specifically in a setting involving a State Attorney and an Assistant State Attorney. While the facts in *Garcetti* differ, Plaintiff need not point to a binding precedent decided on the precisely same set of facts. *See Hope*, 536 U.S. at 739. Indeed, "[the Court need] not just compare the facts of an instant case to prior cases to determine if a right is clearly established; [the Court needs to] also assess whether the facts of the instant case fall within statements of general principle from [the binding] precedents." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1278 (11th Cir. 2004) (internal citation and quotation omitted).

After the Supreme Court issued its decision in *Garcetti*, Defendant had a fair and sufficient warning that political speech as alleged in Plaintiff's complaint is constitutionally protected, and that discharging a public employee because she engaged in such protected speech is unconstitutional. The above-mentioned Supreme Court precedent clearly

established that absent any work environment disruptions Defendant's decision to discharge Plaintiff as a direct consequence of her speaking engagements regarding matters of public concern, conducted outside her official duties, on her own time, with her own resources, would violate her constitutional rights.   The constitutional right was clearly established because a broader principle – that public employees retain their First Amendment rights when speaking as private citizens on matters of public concern where there is no demonstrated detrimental effect on the efficient operation of the State Attorney's Office – should control the alleged facts of the present case.

The law regarding the constitutional violation as alleged in Plaintiff's Amended Complaint was clearly established at the time of the relevant events.   At this juncture, Plaintiff has met her burden to survive Defendant's Motion to Dismiss Plaintiff's claims for damages against Defendant in his individual capacity on the basis of qualified immunity.

### *e.  Counts III, IV, and V are Dismissed as Improper Claims Under the Equal Protection Clausein the Context of Public Employment*

Defendant argues that Counts III, IV, and V pertaining to the Equal Protection Clause should be dismissed for two reasons: (1) "such claims are an improper reclassification of Plaintiff's First Amendment claims"; and (2) "Plaintiff's attempt to identify a similarly situated employee falls significantly short of stating a plausible claim for relief wherein Plaintiff merely alleges in conclusory form that [Defendant] permitted other attorneys to give speeches indistinguishable from Plaintiff's speeches."  (Doc. No. 15 at 12-15.)   Plaintiff responds that her Equal Protection Clause claims are "well-ple[a]d[ed] and seek unique relief independent of her First Amendment claims."   (Doc. No. 18 at 15.)

While it is true that in addition to the First Amendment retaliation claims public employees may also, pursuant to the Equal Protection Clause of the Fourteenth Amendment, bring claims alleging discrimination, such claims must be based upon a membership in a protected class.  "In order to state an equal protection claim, the plaintiff must prove that he [or she] was discriminated against by establishing that other similarly-situated individuals outside of his [or her] protected class were treated more favorably." *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009) (internal citation omitted).  In *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 594, 128 S. Ct. 2146, 2148-49, 170 L. Ed. 2d 975 (2008), the Supreme Court has held that a public employee's equal protection claim cannot be based upon a "class-of-one" theory – i.e., a public employee cannot "state a claim under the Equal Protection Clause by alleging that [he or] she was arbitrarily treated differently from other similarly situated employees, with no assertion that the different treatment was based on the employee's membership in any particular class."  In his conclusion, Chief Justice Roberts, writing for the Court, added that "[p]ublic employees typically have a variety of protections from [adverse employment actions], but the Equal Protection Clause is not one of them."  *Id.* at 609.While the Court noted that state employers cannot "take personnel actions that would independently violate the Constitution, . . . recognition of a class-of-one theory of equal protection in the public employment context – that is, a claim that a state treated an employee differently from others for a bad reason, or for no reason at all – is simply contrary to the concept of at-will employment."  *Id.* at 606.

Thus, because Count III and V of Plaintiff's Amended Complaint do not allege Defendant's disparate treatment was based on Plaintiff's membership in a particular protected class, they are dismissed in their entirety.  Additionally, Count IV of Plaintiff's Amended

Complaint, titled "class-of-one" equal protection claim, states a claim in direct conflict with the Supreme Court precedent, and is therefore dismissed.

> ### f.   Counts VI and VII are Sufficiently Alleged to Overcome Defendant's Motion to Dismiss

Without presenting any legal authority in support, Defendant asks the Court to dismiss Counts VI and VII in their entirety because Plaintiff failed to identify any legal basis for attempting to plead a private cause of action under Article I, Sections 2, 4, and 5 of the Florida Constitution.   (Doc. No. 15 at 15.)In her response, Plaintiff disagrees and points the Court to multiple cases litigated in Florida state and federal courts where plaintiffs, private parties, successfully brought claims asserting their rights under the Florida Constitution through declaratory judgment actions as permitted by Chapter 86 of the Florida Statutes.   (*See* Doc. No. 18 at 18-19.)

This Court agrees with Plaintiff that she sufficiently alleged Defendant violated Article I, §§ 4 and 5 of the Florida Constitution, but disagrees that Plaintiff asserted a cognizable claim under Article I, § 2.   Florida courts have recognized that the Fourteenth Amendment to the U.S. Constitution and Article I, § 2 of the Florida Constitution guarantee the equal protection of the laws, and have traditionally interpreted the state provision consistently with judicial interpretations of the Fourteenth Amendment.   *See, e.g.*, *Sasso v. Ram Prop.Mgmt.*, 431 So.2d 204, 211 (Fla. 1st DCA 1983); *Schreiner v. McKenzie Tank Lines & Risk Mgmt. Servs., Inc.*, 408 So.2d 711 (Fla. 1st DCA 1982).   In light of this recognition and absent any Florida Supreme Court cases to the contrary, the Court finds that the U.S. Supreme Court reasoning in *Engquist* disallowing the class-of-one equal protection claims brought pursuant to the Fourteenth Amendment in the public employment context is

applicable to Plaintiff's class-of-one equal protection claims brought pursuant to the Article I, § 2 of the Florida Constitution.[5]   Because Plaintiff failed to allege she belonged to any protected class, Counts VI and VII are dismissed to the extent that class-of-one claims alleging a violation of Article I, § 2 of the Florida Constitution are not cognizable.

### g.   *This Court Will Exercise Supplemental Jurisdiction Over the Remaining State Constitutional Claims*

Lastly, should this Court dismiss Plaintiff's federal claims against Defendant in his official and individual capacities and should the Court find that Plaintiff sufficiently pleaded the state law claims included in Counts VI and VII, Defendant asks the Court to exercise its discretion and decline supplemental jurisdiction over the state law claims.   (Doc. No. 15 at 16.)   In light of the Court's decision to not dismiss all federal claims and its conclusion that Counts VI and VII were sufficiently pleaded, Defendant's Motion on this basis is denied.

### IV.   CONCLUSION

Based on the foregoing, it is ordered as follows:

1.   Defendant's Motion to Dismiss (Doc. No. 15), filed on July 16, 2010, is GRANTED in part, and DENIED in part.

  a.   Defendant's Motion is GRANTED to the extent that:

    i.   Counts I, II, VI, and VII seeking declaratory and injunctive relief against Defendant in his individual capacity are DISMISSED with prejudice;

    ii.   Counts III, IV, and V brought pursuant to the Equal Protection Clause are DISMISSED with prejudice;

---

[5] Moreover, the Court was unable to find any Florida court recognizing that class-of-one equal protection claim under the Florida Constitution was cognizable in any context.

    iii.  Counts VI and VII, but only insofar as the "class-of-one" equal protection claims pursuant to Article I, § 2 of the Florida Constitution are not cognizable, are DISMISSED with prejudice.

b.  Defendant's Motion is DENIED to the extent that:

    i.  Plaintiff's claims for damages against Defendant in his individual capacity are not dismissed on the basis of qualified immunity.   The Court stresses that the ruling set forth herein is based on Plaintiff's version of the facts, which must be accepted as true in evaluating a motion to dismiss.   Defendant is free to re-assert qualified immunity at any subsequent appropriate point in this litigation.

    ii.  Plaintiff stated a cause of action against Defendant in his official capacity, as she identified a policy that was a "moving force" behind Defendant's actions.

    iii.  Defendant's Motion to Dismiss Plaintiff's federal claims for damages against Defendant in his official capacity is DENIED as moot as Plaintiff concedes that she does not seek damages against Defendant in such capacity.

    iv.  Defendant's Motion to Dismiss Counts VI and VII for failing to identify any legal basis for attempting to plead a private right of action under Article I, §§ 4 and 5 of the Florida Constitution is DENIED.

      v.  Defendant's Motion seeking the Court to decline its exercise of supplemental jurisdiction over the remaining state law claims should it dismiss all federal claims is DENIED.

2. Plaintiff is hereby directed to re-file the Amended Complaint without the dismissed claims within thirty (30) days of this Order.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on March 1, 2011.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Party